In the Matter of Construction of the Last Will and Testament of
MARY WARD, Deceased.

Surrogate's Court, Monroe County, June 29, 1928.

Wills — construction — testatrix's father gave her by will legacy of $5,000 with interest and expressly made legacy lien on homestead farm until paid — no part of principal of legacy was paid during testatrix's lifetime so that lien remained charge on homestead — her will gave her " real estate " to three children of niece — testatrix intended to bequeath her share in homestead — lien created by her father's will goes to three children.

On this proceeding for the construction of testatrix's will, it appears that some forty years before her death her father gave her, by his will, a legacy of $5,000 with interest from the decease of her mother, a life tenant, and expressly made the legacy a lien or charge on his homestead farm until paid. The testatrix lived on the farm until she died, during which time no part of the principal of the legacy was paid, and the lien or charge upon the homestead farm was her only interest in real estate. Her will gave her " real estate " to three children of a niece, share and share alike, " to be theirs absolutely."

Since the nearest element to real estate that can be identified among her possessions as what she probably intended to bequeath was her share in the homestead, this lien or charge created by her father's will goes to the three children, so that they are entitled to take under the legacy in question the share or interest testatrix had, or her estate has, in the realty devised by her father subject to a charge thereon for the payment to testatrix of the sum of $5,000 with interest.

PROCEEDING for construction of will.

*James Heath*, for the executor.

*Sutherland & Dwyer*, for next of kin.

*C. S. McLouth*, special guardian.

*Charles B. Bechtold*, for next of kin.

FEELEY, S.   Nearly forty years before her death on February 7, 1928, her father gave this testatrix by his last will and testament a legacy in the sum of $5,000, with five per cent interest from the decease of her mother, a life tenant; and he expressly made this legacy a lien on his homestead farm until paid.   The remainder was devised to her brother James.   She had always lived at home, and never married, nor did her brother James.   On the land so burdened, she continued to live, after her father's death, with her brother until he died, in 1925, and thereafter until her own death.   No part of the principal of this legacy was paid her, but after James' death his executor twice paid the annual interest to this decedent, according to the terms of the father's will.   This lien or charge upon the homestead farm was her only interest in real estate.   Aside from this, she never owned any real estate, in the strict sense of those words.

Eight years before she died she and her brother went to an attorney's office to have their last wills drawn up.   She told this draftsman she wished to leave her real estate to the three children of a certain niece.   At that point he said to her: " Do you own any real estate? "   She replied: " I own a share in the farm."   He had known both persons for some time; and that they lived on the homestead farm; but he did not then know just what her interest in that farm was.   He proceeded in his manuscript draft of her will with these words: " I give, devise and bequeath my real estate to the three children of my niece, Bertha A. Ward Darron hereinafter named, to be divided between them, share and share alike [naming them] to be theirs absolutely."   Then followed provisions as to disposition of the " share hereinbefore bequeathed," in case any of such legatees predeceased her; but these children all outlived testatrix.   Testatrix next disposed of her " personal property," which consists of about $28,000 in the form of bank deposits.   The will does not contain any further reference of any kind to real estate.

Now this court is asked to construe this will; and the turning point is whether the words " real estate " are to be taken in the strict technical sense of a fee simple absolute, and thereby convict this testatrix of perpetrating a futile mockery on these children who were the objects of her bounty and regard, or whether in applying this grammatically clear phrase to the property or interest in real estate she actually had at the date of the will and intended to

benefit those children withal, the doubt arising from the difference between a fee, and a lien or a charge, be resolved by understanding her to mean what she described to the draftsman as "my share" or interest in the homestead farm by reason of the legacy made a lien or charge thereon by her father's will, which his family, at large, still recognize as unpaid.

Having nothing in expectancy in the nature of real estate, the word "my," used by a testatrix over sixty-four years old, situated as she was, gives rise to the presumption that she believed she then owned something which she was attempting to bequeath. It is not to be supposed she intended to give away at death what was somebody else's; nor is there any reason to infer she meant to go through an empty ceremony merely to show these children what she would do for them if she really had the means to accomplish it, as did the old lady in Irvin S. Cobb's story.

The nearest thing to real estate that can be identified among her possessions as what she probably meant to bequeath in adopting her draftsman's phraseology, "real estate," to signify what she had called, in her lay language, her "share" in the homestead, is this lien or charge on the farm created by her father's will to insure her receiving $5,000 from that source, which has turned out to be the only source from which it can, possibly, be had.

The case of this will runs true to form inasmuch as nothing just like it can be found in the New York reports, but under the general rules some pertinent analogies have been worked out. Mr. Davids in his New York Law of Wills says: (pp. 1259, 1260):

"A leasehold, according to the technical meaning of terms, is personal property, and hence is presumed not to be included in a gift of the testator's real estate; but where the application of the provisions of the will to the component parts of the testator's estate shows that a leasehold was intended to pass, it would seem that the case may be treated as one of error in the use of terms.    *    *    *

"Where the will embodies not merely a general devise of the testator's real estate, but a precise description of a parcel of realty, and the evidence shows that the interest of the testator was that of mortgagee, it seems that the mortgage will be held to pass, the situation being one of erroneous description or misdescription."

The author notes that the Revised Statutes of 1830 changed the common-law theory whereby a mortgage conveyed title to the mortgagee; and that since that revision a mortgage is regarded as personal property.

The special guardian succeeded in discovering an English case that is exactly in point. In 1906 the Supreme Court of Judicature

held (*Matter of Glassington — Glassington* v. *Follett,* L. R. [1906] 2 Ch. Div. 305) that a testatrix who gave a residuary legacy of all her personal property to certain persons named, after she had made a residuary devise to other persons of " my real estate," although she owned no real estate, strictly so called, really intended by the phrase " real estate " to bequeath an interest she then had in the proceeds of the sale of real estate held by trustees, and in the rents, issues and profits thereof until there should be such sale, notwithstanding such interest could not, in law, properly be termed real estate, being rather personal property, but yet not intended, in the circumstances, to pass under the subsequent legacy of her " personal property."

The counsel for the three children, therefore, seems to me to have successfully invoked the application of the maxim, " *Falsa demonstratio non nocet, cum de corpore constat;* " and that they are entitled to take, under the legacy in question, the share or interest the testatrix had, or her estate has, in the realty devised by her father to James Ward, subject to a charge thereon for the payment to her of the sum of $5,000 and interest.

Let a decree be entered accordingly.